**CLARKSON LAW FIRM, P.C.**
Tracey B. Cowan (SBN 250053)
*tcowan@clarksonlawfirm.com*
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050
Fax: (213) 788-4070

**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfim.com*
Olivia E. Davis (SBN 353041)
*odavis@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLF 001, an individual; and CLF 002, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>COOPERSURGICAL, INC.; and THE COOPER COMPANIES, INC.;<br><br>Defendants. | Case No. 24-cv-01192-AGT<br><br>**NOTICE OF MOTION AND MOTION REQUESTING LEAVE FOR PLAINTIFFS TO PROCEED PSEUDONYMOUSLY**<br><br><br><br>Judge: Hon. Alex G. Tse<br>Courtroom: A – 15th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that before the Honorable Alex G. Tse, in Courtroom A, of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs CLF 001 and CLF 002 ("Plaintiffs") will and hereby do

1

NOTICE OF MOTION & MOTION REQUESTING LEAVE        Case No. 24-cv-01192-AGT
FOR PLAINTIFFS TO PROCEED PSEUDONYMOUSLY

move this Court, pursuant to Civil L.R. 7-1(a), for an Order granting Plaintiffs leave to proceed pseudonymously.

DATED: February 28, 2024                              **CLARKSON LAW FIRM, P.C.**

Tracey B. Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050
Fax: (213) 788-4070

Shireen M. Clarkson (SBN 237882)
Ryan J. Clarkson (SBN 257074)
Olivia E. Davis (SBN 353041)
**CLARKSON LAW FIRM, P.C.**
22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION REQUESTING LEAVE TO PROCCED PSEUDONYMOUSLY

Plaintiffs, proceeding pseudonymously as CLF 001 and CLF 002, bring this action against Defendants CooperSurgical, Inc. and the Cooper Companies, Inc. (collectively, "Cooper" or "Defendants") to recover damages related to the loss and damage to their most precious belongings: their embryos and future children. This tragedy was caused by Defendants' manufacturing and distribution of defective embryo culture media, a critical supply used by fertility clinics in the In Vitro Fertilization ("IVF") process. In IVF, fertility patients take medication to stimulate egg production.[1] A fertility doctor surgically retrieves the eggs from the woman.[2] Then, scientists fertilize those eggs with sperm in a petri dish in a lab.[3] The resulting embryos remain in a solution—called culture media—for roughly a week while they develop.[4] Once the embryos have fully developed, they can be transferred to a woman's womb or frozen for later use.[5] Here, Plaintiffs' fertility clinic used defective media from Defendants, which had the tragic consequence of damaging or destroying Plaintiffs' embryos before they could be used to start a pregnancy. Due to the sensitive and private nature of this matter, Plaintiffs respectfully request this Court to grant their motion to proceed pseudonymously pursuant to Federal Rule of Civil Procedure 26(c).

Ninth Circuit law supports Plaintiffs' request. In fact, this Court permitted hundreds of plaintiffs under nearly identical circumstances to proceed pseudonymously prior to trial in a factually analogous fertility negligence case where a defective product led to the loss and damage of those fertility patients' eggs and embryos. *In re Pac. Fertility Ctr. Litig.*, Case No. 18-cv-01586-JSC, Dkt. 691 (N.D. Cal. 2021) (granting plaintiffs' motion to seal plaintiffs' names and identifying

---

[1] *Ovulation Induction*, UCSF HEALTH, https://www.ucsfhealth.org/education/ovulation-induction (last visited Feb. 15, 2024).

[2] *Oocyte (egg) Retrieval,* EMORY UNIVERSITY SCHOOL OF MEDICINE, https://med.emory.edu/departments/gynecology-obstetrics/patient-care/patient-education/oocyte-retrieval/index.html#:~:text=Once%20you%20are%20sedated%2C%20the,surrounding%20fluid%20into%20the%20needle (last visited Feb. 15, 2024).

[3] *What is In Vitro Fertilization?* STANFORD MEDICINE CHILDREN'S HEALTH, https://www.stanfordchildrens.org/en/service/fertility-and-reproductive-health/what-is-in-vitro-fertilization (last visited Feb 15, 2024).

[4] *Id.*

[5] *Id.*

1

NOTICE OF MOTION & MOTION REQUESTING LEAVE    Case No. 24-cv-01192-AGT
FOR PLAINTIFFS TO PROCEED PSEUDONYMOUSLY

1    information because the request was "sufficiently narrow" and only sought sealing of "confidential

2    patient information."); *see e.g. A.A. and A.E. v. Chart, Inc.*, Case No. 3:20-cv-04961 (N.D. Cal.,

3    filed July 23, 2020); *S.E. and S.F. v. Chart Inc.*, Case No. 3:20-cv-04990 (N.D. Cal., filed July 24,

4    2020); *A.G. and A.H. v. Chart Inc.*, Case No. 3:20-cv-05045 (N.D. Cal., filed July 24, 2020); *D.B.*

5    *and D.G. v. Chart Inc.*, Case No. 3:20-cv-05054 (N.D. Cal., filed July 24, 2020); *E.I. and E.J. v.*

6    *Chart Inc.*, Case No. 3:20-cv-05058 (N.D. Cal., filed July 24, 2020); *H.J. I.G. v. Chart Inc.*, Case

7    No. 3:20-cv-05066 (N.D. Cal., filed July 24, 2020); *L.J. and M.B. v. Chart Inc.*, Case No. 3:20-cv-

8    05075 (N.D. Cal., filed July 24, 2020); *W.H. and W.I. v. Chart Inc.*, Case No. 3:20-cv-05098 (N.D.

9    Cal., filed July 24, 2020); *P.K. and R.K. v. Chart Inc.*, Case No. 3:20-cv-08501 (N.D. Cal., filed

10   Nov. 1, 2021) (hereinafter, collectively, "the PFC Cases").

11         As in *In re Pacific Fertility Center*¸ the crux of this case is an extremely personal matter: a

12   couple's decision to use fertility services to get pregnant and have children. Plaintiffs put their trust

13   in Defendants to develop products that would be safe and effective for cultivating embryos to help

14   them build their family. Due to Defendants' conduct, what should have been a joyous experience

15   for Plaintiffs was a devastating one, leaving their future plans for and ability to conceive in question.

16   Plaintiffs deserve to mourn this tremendous loss privately, without undue public attention or

17   scrutiny.

18         Subject to entry of an appropriate protective order, Plaintiffs will disclose their identities to

19   Defendants, who thus will be able to defend against their legal claims no differently from any other

20   lawsuit in which plaintiffs proceed with their legal names. Thus, consistent with Ninth Circuit law,

21   Plaintiffs respectfully petition this Court for an Order permitting them to keep their identities private

22   from the public in this incredibly private and sensitive matter.

23   **I.    FACTS RELEVANT TO PLAINTIFF'S MOTION**

24         After struggling to conceive naturally, Plaintiffs made the difficult decision to try to turn to

25   IVF to fulfill their dreams of having biological children. Complaint, ¶ 41. Because of the physical

26   toll the procedures would take on Plaintiff CLF 001, and the financial commitment required, this

27   was a difficult decision. *Id.* ¶ 47. Plaintiff CLF 001 struggled with having to seek out ART for help.

28   *Id.* She felt incredibility guilty for failing to get pregnant naturally, so the decision to turn to IVF

1  was not one she took lightly. *Id.*

2  In December of 2023, Plaintiff CLF 0001 had her egg retrieval procedure. *Id.* at ¶ 42. Her fertility doctor surgically retrieved twenty (20) of her eggs. *Id.* The clinic then successfully fertilized nineteen (19) eggs using Plaintiff CLF 002's sperm. *Id.* ¶ 43. Plaintiffs were thrilled that they would have several embryos reach the blastocyst stage by Day 5. To Plaintiffs' and their doctor's shock, *none* of the nineteen (19) embryos developed to blastocyst. *Id.* ¶ 44. Sadly, all of Plaintiffs' embryos arrested during development. *Id.* This was an incredibly devastating and unusual result. *Id.*

Plaintiffs consulted with their doctor to understand the utter failure of their cycle. *Id.* ¶ 45. Their doctor revealed that the lab had used Defendants' recalled embryo culture media during the cycle, and that this media was compromised by a lack of magnesium, which was almost certainly the cause of the embryos' arrest and damage. *Id.*

Plaintiffs have dealt with incredible financial, physical, and emotional distress following the destruction of their precious embryos. *Id.* ¶¶ 46-54. When Plaintiff CLF 001 got the news that none of her embryos had properly developed, she spent the entire day crying. *Id.* ¶ 49. It was the hardest news she had ever received. *Id.* Plaintiffs struggled to work through the pain of the news and fought like they never had in their decades-long relationship. *Id.* For days, Plaintiff CLF 001 felt like she was on the verge of a breakdown. *Id.* ¶ 50. She tried to put on a brave face and continue on with her daily life, but she was deeply depressed. *Id.* She felt, and continues to feel, an immense heaviness in her chest. She feels guilty for failing to achieve motherhood again. *Id.* Plaintiff CLF 002 has also suffered as a result of Plaintiffs' embryo loss. *Id.* ¶ 51. Having to witness his wife go through such intense emotional and physical pain has taken an incredible toll on him. *Id.* Plaintiffs' failed IVF cycle has had an ongoing effect on their relationship. *Id.* ¶ 52. The stress of the situation has and continues to unearth issues in Plaintiffs' relationship that they struggle to resolve given the emotional distress they are experiencing. *Id.*

All in all, Plaintiffs are still reeling from their tremendous loss, and the uncertainty this situation has caused them regarding their ability to build a family.

## II. LEGAL FRAMEWORK GOVERNING MOTIONS TO PROCEED PESUDONYMOUSLY

3

The Federal Rules of Civil Procedure require pleadings to state the names of all parties. Fed. R. Civ. P. 10(a). However, the Ninth Circuit allows an exception to the rule when pseudonym status is sought to preserve privacy in sensitive and highly personal matters. *Does I through XXIII v. Advanced Textile*, 214 F.3d 1058, 1068 (9th Cir. 2000). The Ninth Circuit therefore permits a party to proceed anonymously where the "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068. In particular, pseudonym status is granted when it is necessary "to protect a person from harassment, injury, ridicule, or personal embarrassment." *Id.* at 1067–68 (quoting *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981)). For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). In cases where the plaintiff demonstrates a need for anonymity, "the court should use its powers to manage pretrial proceedings under Rule 16(b) and to issue protective orders limiting disclosure of the party's name under Rule 26(c) 'to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case.'" *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2021 WL 1146406, at *2 (N.D. Cal. Mar. 4, 2021) (quoting *Doe v. Kamehameha Sch.*, 596 F.3d 1036, 1042 (9th Cir. 2010)).

Consistent with the Ninth Circuit's position, "The United States District Court for the Northern District of California has considered 'social stigmatization' among the most compelling reasons for permitting anonymity." *Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 991 (N.D. Cal. 2015) (finding that plaintiffs alleged sufficient threats of personal embarrassment and social stigmatization to proceed anonymously, in a case involving "the area of human sexuality"). Finally, the Ninth Circuit has also allowed plaintiffs to proceed anonymously where revealing their identity creates a "risk of retaliatory physical or mental harm." *See Advanced Textile*, 214 F.3d at 1068. Where retaliation is concerned, a court may consider the severity of the harm, the reasonableness of the anonymous party's fears, and their vulnerability to such harm. *Id.*; *see also Int'l Partners for Ethical Care Inc. v. Inslee*, No. 3:23-cv-05736-DGE, 2023 U.S. Dist. LEXIS 191956, at *4 (W.D. Wash. Oct. 25, 2023) (allowing party to proceed anonymously because the case implicated their

1  personal religious beliefs and their children's gender identities, which could subject them to
2  "potential public hostility").

3  As discussed in greater detail below, the facts of this case typify the type of deeply personal
4  and intimate details that have justified the use of pseudonyms in this District and in other courts
5  across the country.

### III. ARGUMENT

This case involves deeply personal details pertaining to a couple's fertility and their attempt to conceive a child. Given the intimate, sensitive, and private nature of the facts of this case, and Ninth Circuit precedent, Plaintiffs should be permitted to proceed anonymously. As discussed at length herein, requiring Plaintiffs to reveal their identities could possibly embarrass them, cause them further emotional distress, and/or open them up to social stigmatization, because of the sensitive nature of the issues at hand. This risk of harm to Plaintiffs outweighs the risk to the public and the potential prejudice to Defendants. Allowing Plaintiffs to proceed anonymously will not inhibit this Court's or Defendants' ability to adjudicate these claims, nor the public's ability to scrutinize them. Defendants' wrongdoing can be assessed without disclosing Plaintiffs' identities.

### a. Disclosure of Plaintiffs' Identities Would Reveal Highly Sensitive and Personal Information Relating to Fertility and Conception, Putting Plaintiffs at a Substantial Risk of Social Stigmatization and Retaliation.

This case will require the disclosure of details related to Plaintiffs' highly personal fertility services, as well as private details related to ability to conceive, sexuality, mental health, religion, birth control, and miscarriage. These details are not only deeply private, but are often the subject of controversial public opinions, and thus open Plaintiffs up to social stigma. *See SFBSC Mgmt., LLC*, 77 F. Supp. 3d at 991 (finding that requiring the plaintiffs to disclose private details falling in "the field of sexuality" would open them up to social stigma); *Doe v. Hartford Fire Ins. Co. Emple. Income Prot. Plan*, No. 2:17-cv-01714-KJM-EFB, 2017 U.S. Dist. LEXIS 147786, at *3 (E.D. Cal. Sep. 11, 2017) (allowing plaintiff to proceed anonymously because "[s]hielding plaintiff's identity will prevent unwarranted publication of details related to a woman's infertility and a minor child's conception and gestation."). Accordingly, this Court has a history of allowing Plaintiffs in fertility-

related products' liability cases to proceed using pseudonyms, having done so in over a hundred cases related to the failure of a cryogenic tank at Pacific Fertility Center in San Francisco just four years ago. *See, e.g.,* The PFC Cases, *supra* pg. 2. Just as in the PFC Cases, Plaintiffs here meet the standard for proceeding using pseudonyms.

Historically, intimate details concerning conception, child-rearing, sex, contraception, and sexuality have been regarded as highly private and worthy of protection, due to their tendency to elicit social stigmatization. *See e.g. Roe v. Wade*, 410 U.S. 113 (1973) (implicitly recognizing the practice of proceeding anonymously in cases involving intimate reproductive decisions); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) ("The intensely personal nature of pregnancy does, we believe… give way to a policy of protecting privacy in a very private matter."); *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979) (identifying that most cases permitting anonymity involve decisions related to conception, reproductive rights, and child-rearing); *M.M. v. Zavaras*, 139 F.3d 798, 802 (10th Cir. 1998) (same); *State v. Jacobus*, 348 N.Y.S.2d 907, 913–14 (Sup. Ct. 1973) (finding that the "penumbra of privacy" as articulated in *Griswold*, a leading case on reproductive rights, should "extend to the protection of identifying names" of individuals making deeply private decisions about conception); *Doe v. NCAA*, No. 22-cv-01559-LB, 2022 U.S. Dist. LEXIS 156695, at *6 (N.D. Cal. Aug. 30, 2022) ("Rather than falling short, the allegations involve sensitive topics such as the plaintiffs' sexuality that justify the plaintiffs' request to proceed anonymously."); *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 437 (S.D.N.Y. 1988) (allowing plaintiff to proceed anonymously to protect him from having to publicly disclose his sexual identity). Matters involving conception are also often closely tied to religious beliefs, the disclosure of which may warrant anonymity. *See Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981) (finding implicated religious beliefs to be subject matter favoring anonymity); *Publius v. Boyer-Vine*, 321 F.R.D. 358, 363 (E.D. Cal. 2017) (endorsing the position in *Stegall*).

Additionally, where a case necessitates disclosure of confidential medical information related to fertility procedures, anonymity may also be justified. *Doe v. Cabell Huntington Hosp., Inc.*, No. 3:23-0437, 2023 U.S. Dist. LEXIS 218946, at *6 (S.D. W. Va. Dec. 8, 2023) (granting anonymity in case concerning client's fertility challenges, in part because "[m]edical information

1  regarding fertility issues is surely highly personal and sensitive in nature."). In cases stemming from
2  fertility procedures, disclosure of medical information is not ancillary to a plaintiffs' claim—it is
3  inextricably linked. *Id.* Further, this particular kind of medical information exposes information that
4  plaintiffs often "wish[] to remain private," such as their personal "difficulties becoming pregnant."
5  *Id.* at *2, *6 (noting that requiring public disclosure of plaintiff's fertility challenges, which she had
6  not yet disclosed to family, let alone the public, would only exacerbate her harm).

7        Fertility and conception are deeply personal and private issues, especially for women like
8  Plaintiff CLF 001 *See Roe*, 410 U.S. at 153 (noting the weight of conception and maternity on a
9  woman). Many women struggle with guilt, shame, and self-confidence issues when they discover
10 their inability to conceive naturally. *See Cabell Huntington Hosp.,* 2023 U.S. Dist. LEXIS 218946,
11 at *2 (noting that the plaintiff experienced unnecessary embarrassment and exacerbated anxiety
12 after defendant disclosed her difficulties becoming pregnant). Ages-long pressure has made women
13 feel that conception is one of their primary responsibilities and is largely indicative of their worth.[6]
14 As such, turning to IVF for help conceiving can be an extremely challenging and emotional decision
15 for a woman to make. On top of that, they then must undergo painful procedures and subject
16 themselves to a variety of medications that have a range of brutal side effects. For a woman to put
17 herself through the mental and physical challenges of ART treatments and come out with nothing
18 to show for is extremely devastating.[7]

19       Finally, in Plaintiffs' case, there is also potential for retaliation given the strong religious
20 beliefs that are often tied to fertility and conception. In fact, many religious individuals take issue

---

[6] *See* Spencer Paige Brown, *Exploring the Association Between Female Infertility Stigma, Women's Cognitions, and Coping Responses*, PCOM PSYCHOLOGY DISSERTATIONS (2022), https://digitalcommons.pcom.edu/psychology_dissertations/586.= ("Infertility can have a negative impact on the emotional well-being and cognitions of women" and may be seen "as a failure to live up to society's standard of what it means to be a woman.") (internal citations omitted).

[7] Shereen Assaysh-Oberg, *Women's Experience of Infertility & Treatment—A Silent Grief and Failed Care and Support*, SEXUAL & REPRODUCTIVE HEALTHCARE, Volume 37 (September 2023), https://doi.org/10.1016/j.srhc.2023.100879 ("The IVF treatments, being invasive and not only putting physical pressure on women, but also emotional and mental, can be traumatic and potentially devastating when not successful.").

1   with the decision to use medical fertility services at all.[8] This possibility for retaliation further

2   supports granting Plaintiffs' motion. *See Advanced Textile*, 214 F.3d at 1068 (agreeing with sister

3   circuits that potential retaliation can justify allowing a party to proceed pseudonymously).

4         Forcing Plaintiffs to publicly disclose their inability to conceive naturally, the taxing process

5   of undergoing highly personal medical procedures, and their devastating loss of their embryos will

6   expose Plaintiffs to substantial harm—only worsening what they have already suffered. *See Cabell*

7   *Huntington Hosp.,* 2023 U.S. Dist. LEXIS 218946, at *6 (finding that forcing plaintiff to publicly

8   disclose her fertility struggles would exacerbate her harm). Losing a child, even a prospective child,

9   is one of the greatest harms a parent can undergo. Plaintiffs are struggling with reliving this loss and

10  moving forward in the wake of this tragedy, and requiring Plaintiffs to publicly share their story

11  could decimate the strides they have made towards recovery. Sharing their stories is challenging

12  enough—forcing them to do so publicly would only cause further shame, guilt, and pain.

      **b. There is an Atypically Weak Public Interest in Knowing the Identities of Plaintiffs.**

15  Although the public has a general interest in court proceedings, this interest is not necessarily

16  impaired by allowing a party to proceed anonymously. *See SFBSC Mgmt., LLC*, 77 F. Supp. 3d at

17  996 ("Anonymity, in other words, does not in this case threaten the principle of open courts."). Party

18  anonymity does not prevent the public from ascertaining the issues in a case, nor does it inhibit the

19  court's ability to resolve such issues. *Advanced Textile Corp*., 214 F.3d at 1068-69 (9th Cir. 2000)

20  ("[P]arty anonymity does not obstruct the public's view of the issues joined or the court's

21  performance in resolving them.") (citing *Stegall*, 653 F. 2d at 185); *Doe v. Github, Inc*., No. 22-cv-

22  06823-JST, 2023 U.S. Dist. LEXIS 86983, at *21 (N.D. Cal. May 11, 2023) (finding that disguising

23  plaintiffs' identities did not impact public scrutiny). Moreover, while the presumptive openness of

24  proceedings is a cornerstone of the American legal system, there is a greater interest in affording

25  and encouraging Plaintiffs who have suffered harms relating to the most intimate details of their

26  lives to litigate their claims with the protection of anonymity. *M.J.R. v. United States*, No. 23-cv-

---

[8] Joseph G. Schenker, *Assisted Reproductive Practice: Religious Perspectives*, REPROD. BIOMED ONLINE, (March 2005), https://doi.org/10.1016/s1472-6483(10)61789-0.

1   05821-VKD, 2023 U.S. Dist. LEXIS 203826, at *3 (N.D. Cal. Nov. 14, 2023) (identifying several
2   cases where the courts have allowed plaintiffs' interest to proceed anonymously outweighs that of
3   the public, given the intimate, sexual nature of plaintiffs' allegations); *M.R. v. Fed. Corr. Inst.
4   Dublin*, No. 22-cv-05137-VKD, 2022 U.S. Dist. LEXIS 182471, at *4 (N.D. Cal. Oct. 5, 2022)
5   (finding that where intimate, sensitive issues in a case would subject plaintiffs to embarrassment
6   and emotional injury, allowing them to proceed anonymously would better serve the public, to avoid
7   deterring other victims from coming forward). Here, the public interest is not harmed by allowing
8   Plaintiffs to proceed anonymously, since the basic details of the case and legal issues will still be a
9   matter of public record.

10   In contrast, the greater public interest would be significantly harmed if identifying
11  individuals like Plaintiffs resulted in an overall chilling effect upon all fertility negligence litigation.
12  Fertility procedures are already emotionally and physically taxing. To require that women or
13  couples that have had traumatic fertility experiences bare their medical history, infertility issues,
14  personal beliefs related to conception, feelings, and emotions publicly would deter many of those
15  impacted from coming forward and prolonging their traumatic experience. If those affected by
16  fertility negligence are afraid to come forward, massive companies like Defendants will only be
17  further encouraged to conduct business without the appropriate standard of care.

18  Further, the operative issues in this case relate mainly to whether Defendants' Recalled
19  Embryo Culture Media was defective. As such, anonymity will not be an obstacle to public
20  scrutiny—the public can discern Defendants' wrongdoing without knowing Plaintiffs' names. *See*
21  *Doe v. Ayers*, 789 F.3d 944, 946 (9th Cir. 2015) (quoting *Advanced Textile*, 214 F.3d at 1068); *see*
22  *also Advanced Textile*, 214 F.3d at 1073, n.15 ("we fail to see[] how disguising plaintiffs' identities
23  will obstruct public scrutiny of the important issues in this case . . . For instance, the question
24  whether there is a constitutional right to abortion is of immense public interest, but the public did
25  not suffer by not knowing the plaintiff's true name in *Roe v. Wade*."); *Doe v. United of Omaha Life*
26  *Ins. Co.*, No. 23-cv-02307-JST, 2023 U.S. Dist. LEXIS 146511, at *3 (N.D. Cal. Aug. 21, 2023)
27  ("Here, Plaintiff's identity appears to have no bearing on the resolution of the issues, and so a
28  pseudonym will not impede public access to the substance of the proceedings.); *Doe v. Lincoln Nat'l*

9

1   *Life Ins. Co.,* No. 17-cv-03963-YGR, 2017 U.S. Dist. LEXIS 117110, at *4 (N.D. Cal. July 26,
2   2017) (same).

### c. Granting Plaintiffs' Motion will not Prejudice Defendants or Compromise Defendants' Ability to Present a Full Defense.

Nor will Defendants be prejudiced by the granting of Plaintiffs' anonymity. *See M.J.R.*, 2023 U.S. Dist. LEXIS 203826, at *4 (finding that where sexually intimate allegations are involved, "[t]he prospect of such personal embarrassment and emotional injury outweighs any potential prejudice to defendants."). Defendants are corporate entities that lack the vulnerability the Plaintiffs face as a young couple that just experienced the tremendous loss of their precious embryos, particularly in an era where publicly filed documents are easily searched online. Anonymity in this case, as was implemented in this Court's *In re Pacific Fertility Center Litigation*, would be limited to the pseudonyms that the Plaintiffs use, not to who they are in every other respect. Plaintiffs will provide their full names to Defendants under a protective order so that Defendants will not be prejudiced in investigating the claims and defenses at issue.

### CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court allow them to proceed pseudonymously, under the initials CLF 001 and CLF 002, and request all filed materials, judgements, and any other documents relating to this action refer to Plaintiffs solely as "CLF 001" and "CLF 002."

DATED: February 28, 2024                    **CLARKSON LAW FIRM, P.C.**

_____
Tracey B. Cowan (SBN 250053)
**CLARKSON LAW FIRM, P.C.**
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050
Fax: (213) 788-4070

Shireen M. Clarkson (SBN 237882)
Ryan J. Clarkson (SBN 257074)
Olivia E. Davis (SBN 353041)
**CLARKSON LAW FIRM, P.C.**

22525 Pacific Coast Highway
Malibu, CA 90265
Tel.: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway, Malibu, CA 90265  |  P: (213) 788-4050  F: (213) 788-4070  |  clarksonlawfirm.com

11

NOTICE OF MOTION & MOTION REQUESTING LEAVE FOR PLAINTIFFS TO PROCEED PSEUDONYMOUSLY

Case No. 24-cv-01192-AGT